```
             UNITED STATES DISTRICT COURT
             SOUTHERN DISTRICT OF FLORIDA
             CASE NO. 00-6052-CR-DIMITROULEAS
```

UNITED STATES OF AMERICA

v.

NEIROU KOUNIGUELIS,

    DEFENDANT,
_____/

GOVERNMENT'S RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION TO
SUPPRESS STATEMENTS AND EVIDENCE

    Comes now The United States of America, by and through the undersigned assistant united states attorney and files this government's response in opposition to defendant's motion to suppress statements and evidence and in support thereof states as follows:

**BACKGROUND**

    1.    The defendant has moved to suppress admitted Mirandized statements that he made to the agents as well as evidence consisting of a cellular telephone ringing in in the defendant residence contemporaneously to the agent dialing a telephone number they believed was associated with the defendant.

    2.    On February 24,2000 INS S/A Richard Bendell drove to the Boca Raton residence of the defendant. S/A Bendell observed a vehicle registered to the defendant parked at the residence. The agents introduced themselves and advised the defendant of his constitutional rights per Miranda. See INS Memorandum of Investigation with statement of the defendant attached as government exhibit A .



3. The defendant invited the INS agents into his residence and voluntarily began to talk with them. After the defendant was advised of his Miranda warnings he advised that he understood his rights and wished to waive his rights and speak with the agents.

4. The defendant gave a statement regarding his involvement in the visa fraud that the agents were investigating. The agents requested the defendant's consent to search his residence which the defendant refused. The agents did not conduct a search of the defendant's house. While in the defendant's house INS S/A Bendel used his cellular phone called telephone number 561.347.9375, a telephone number thought to be associated with the defendant. As soon as the S/A completed dialing the telephone number, he heard a telephone ringing in another part of the residence.

5. The S/As placed the defendant in custody and left the residence with the defendant. The S/A did not "walk through the defendant's home in search of incriminating evidence" as alleged nor did they remove any evidence from the residence.

## MEMORANDUM OF LAW

To determine whether testimonial evidence provided by a defendant was voluntary, the reviewing court must determine in the totality of the circumstances, the police obtained the evidence by overbearing the will of the accused. Haynes v. Washington, 373 U.S. 503, 513-14 (1963) Test for involuntariness is whether defendant's will is overborne or is the confession the product of rational intellect and free will.

The defendant alleges that certain statements were made to him by the agents such as "he was in serious trouble and that things would go a lot easier for him if he cooperated by giving a statement. The defendant further alleges that he was told "that if he did not give a statement, he would be arrested and go to prison."

assuming *arguendo* that these statements were made they do not rise to the level of unconstitutional overbearing police conduct as alleged by the defendant. It is well settled that the police can inform a defendant that if he cooperates things may go easier for him and/or his cooperation will be made known to the prosecutor and/or judge. U.S v. Ruggles, 70 F.3d 262, 265-66 92nd Cir 1995) confession voluntary despite promise of leniency if defendant cooperated with law enforcement officials. U.S. v. Ornelas-Rodriguez 12 f.3d 1339, 1347 (5th Cir.1994), Where the court held that the defendant's confession was voluntary even though the officers had explained the advantages of cooperation to the defendant. See U.S. v Dillon, 150 F.3d 754,758 (7th Cir. 1998), Confession held to be voluntary despite federal agent's promise to bring defendant's cooperation to prosecutor's attention.

The defendant next alleges that he did not knowingly and voluntarily waive his rights due to the fact that his native language is Lithuanian and the agents did not read him his rights in his native language or speak any Lithuanian.

As a threshold issue, it must be pointed out that at the defendant has had no trouble communicating with various components of the criminal justice system since his arrest. The defendant had no trouble communicating with a representative from Pretrial

Services who prepared a report on the defendant. At his initial appearance on February 25, 2000 he advised the court that he understood English and had no trouble communicating with the court. And finally on March 25, 2000, the defendant, pursuant to a proffer letter while his counsel was present, gave a detailed statement statement to the case agent without the benefit of an interpreter. INS records indicate that the defendant is a permanent resident having entered the U.S. in 1997.  The defendant advised pretrial Services that he is self employed as a painter/construction worker and entered the U.S. in 1991.

Although nothing in the record indicates that the defendant does not speak the English language the case law is clear as to what level of English language proficiency is necessary to support a valid waiver of the Miranda rights.  See U.S. v. Guay, 108 F.3d 545,549  (4th Cir. 1997) valid waiver when French-Canadian suspect who understood basis English was read warnings line by line and indicated that he understood the warnings. Clearly viewing the interview and subsequent statements in the totality of the circumstances, the defendant knowingly and voluntarily waived his Miranda rights and made  admissible statements to the agents.

Next addressing the defendant's contention that the agents calling the number they were given as being associated with the defendant and the subsequent ringing  his cell phone while in his residence is a search is not supported by the case law.  The agents were invited into the house. While in the house the agents made a call to the telephone number. This is not a search.  The defendant has failed to demonstrate a privacy interest in the ringing of his

telephone. Additionally, at this point, the agents had probable cause to obtain a search warrant for the house. If the agent had not called the number the agents could have searched the house pursuant to a search warrant and recovered the telephone. Therefore the telephone ring is admissible pursuant to the doctrine of inevitable discovery.

Wherefore, based on the above, it is respectfully submitted that this Honorable court deny the Defendant's motion to suppress statements and evidence.

Respectfully submitted,

THOMAS E. SCOTT
UNITED STATES ATTORNEY

By: _____
Thomas P. Lanigan
ASSISTANT UNITED STATES ATTORNEY
Court ID # A5500033
500 E. Broward Blvd Suite 700
Fort Lauderdale, FL 33301
954-356-7255 ext 3590
954-356-7230 fax

CERTIFICATE OF SERVICE

I hereby certify that a copy of this Government's Response to Defendant Motion to Suppress Statement and Evidence was mailed this 3rd day of May ,2000 to:

ALLEN KAUFMAN,Esq.,
2900 N Dixie Highway Suite 201
Oakland Park,FL.
33334

_____
Thomas P. Lanigan
ASSISTANT UNITED STATES ATTORNEY

cc: S/A Rhonda Maskus, INS

**U.S. Department of Justice**
Immigration and Naturalization Service



MEMORANDUM OF INVESTIGATION

| FILE NUMBER | NAME | CONTROL OFFICE |
|---|---|---|
| MIA INV 99-040 | Operation "WHITE COLLAR" | MIA |

On February 24, 2000, contacted Dalia JABLONSKIENE at her residence along with BSO deputy. JABLONSKIENE presented a Lithuanian passport with a B-1/B-2 visa and an H-1B I-94. INS record checks revealed that JABLONSKIENE is a B-2 overstay and was never issued an H-1B visa or I-94 with an H-1B COA.

JABLONSKIENE was advised of her Miranda warnings and waived said warnings. JABLONSKIENE stated that she obtained the I-94 from a Lithuanian citizen named 'Neirus' LNU a.k.a. 'Neirou' LNU (later identified as Neirou KOUNIGUELIS) who circulates Lithuanian newspapers throughout the Lithuanian community. JABLONSKIENE stated that she had met KOUNIGUELIS approximately three (3) years ago through a mutual friend. JABLONSKIENE stated that approximately one month ago in the latter part of January 2000, she met KOUNIGUELIS at her residence in Deerfield Beach and received the I-94 from KOUNIGUELIS. JABLONSKIENE stated that KOUNIGUELIS wrote her name on the I-94 and stapled it into her passport. JABLONSKIENE further stated that KOUNIGUELIS was going to charge her $800.00 USD for the I-94 when she received the SS card. JABLONSKIENE stated that on February 23, 2000, JABLONSKIENE called KOUNIGUELIS because she wanted to know the status of her SS card. JABLONSKIENE stated that KOUNIGUELIS called her back and made arrangements to meet her at the Pompano SS office to determine the SS card status. JABLONSKIENE stated that she met KOUNIGUELIS at the SS office on that date and that they both talked with the SS office representative. The SS representative told them that she would receive her SS card in the mail in six to eight weeks.

A review of her telephone caller identification device provided the name "KOUNIGUELIS NEI" and the number 1-954-857-4874. JABLONSKIENE provided a notebook which contained the telephone number 347-9375. JABLONSKIENE stated that this was the telephone number that belonged to KOUNIGUELIS and that she had called him at this number previously.

On February 24, 2000 at approximately 4:30 p.m., I saw a white Hyundai Excel bearing the license plate A26-QVP parked in front of the last known address of KOUNIGUELIS. Florida Department of Motor Vehicle record checks confirmed that that vehicle is registered to KOUNIGUELIS. I contacted KOUNIGUELIS at his residence in Boca Raton, FL. KOUNIGUELIS was advised of his Miranda warnings. He waived said warnings and agreed to make a statement. KOUNIGUELIS stated that he had given the I-94 to JABLONSKIENE and had met her on February 23, 2000 at the Pompano Beach SS office in order to assist her in obtaining her SS

| NAME | DATE: |
|---|---|
| Richard S. Bendel, Special Agent | February 25, 2000 |

G-166c (subs)   Page 1

**U.S. Department of Justice**
Immigration and Naturalization Service

**MEMORANDUM OF INVESTIGATION**

| FILE NUMBER | NAME | CONTROL OFFICE |
|---|---|---|
| MIA INV 99-040 | Operation "WHITE COLLAR" | MIA |

card. KOUNIGUELIS further stated that he had made a big mistake and that he had filled out the I-94 for JAB. KOUNIGUELIS stated that he did not charge any money for the I-94. Additionally, KOUNIGUELIS stated that he received the I-94 from a person in New York City but would not provide further information. KOUNIGUELIS would not consent to a search of his apartment.

While at the residence of KOUNIGUELIS, I called the number listed on the caller ID device belonging to JABLONSKIENE and could hear a telephone which was not the home telephone ring in another room. Further, KOUNIGUELIS stated that his home telephone number was (561) 347-9375. This is the same number which is listed in the notebook provided by JABLONSKIENE.

On thus date, filed complaint against defendant with AUSA Thomas Lanigan (954.356.7255 x3590) and appeared at initial appearance. PTD hearing is set for Thursday, March 2 at 10:30 a.m. Grand jury has been set for the same date.

Obtained video tape of defendant entering Pompano Beach SS office with JABLONSKIENE on February 23, 2000. Further, obtained original SS-5 application for JAB. Handwriting on application appears to match the handwriting on the I-94.

| NAME | DATE |
|---|---|
| Richard S. Bendel, Special Agent | February 25, 2000 |

G-166c (subs)                                                                                                   Page 2